UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br>Plaintiff<br>v.<br>Edgar Rosas,<br>Defendant | Case No. 2:26-cr-00167-CDS-EJY-5<br>**Order Granting Motion to Review Detention Order and Denying Request for Release with Conditions**<br>[ECF Nos. 86, 91] |

Defendant Edgar Rosas filed a motion requesting this court conduct a review of United States Magistrate Judge John Z. Boyle's order detaining him pending trial. Mot., ECF No. 86. The government opposes the motion. Opp'n, ECF No. 90. This matter is now fully briefed.[1] For the reasons set forth herein, I grant Rosas's motion for review of his detention order but find that the magistrate judge properly found him to be a risk of flight. As a result, Rosas's request to be released on conditions is denied and the magistrate judge's detention order stands but is modified as set forth herein.

## I. Background

On August 12, 2026, defendant Edgar Rosas was charged in count two of a five count indictment with conspiracy to distribute a controlled substance in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)(vi). ECF No. 36. As set forth in his motion, Rosas was arrested in Phoenix, Arizona, on September 16, 2026. ECF No. 86 at 2. He made his initial appearance on the same day, during which the government moved for detention. *Id.* Judge Boyle held a detention and identity hearing two days later. *Id.* After hearing proffers from both the government and the defense, *see id.* at 2–3, Judge Boyle ordered Rosas detained as a

[1] The court notes that Rosas filed a reply. ECF No. 91. But Local Rule 12-3 states that replies are only allowed with leave of court. LCR 12-3. Rosas did not seek leave of court before filing his reply, so it is not considered by the court and is hereby stricken.

flight risk and a danger to the community. *See* Detention order, ECF No. 81-1. Specifically, Judge Boyle found by clear and convincing evidence that Rosas is a danger to the community and by a preponderance of the evidence that the defendant is a risk flight, so detention was warranted. *Id.* at 1. As further explained in the detention order, there was probable cause to believe that Rosas committed an offense for which the maximum term of imprisonment is ten years or more. *Id.* Judge Boyle also found that while there were a few factors that weighed in favor of release, detaining Rosas pending trial was appropriate based on the "scope of the conspiracy (100s of kilograms of fentanyl) and Defendant's role (at least average role and a trusted member of the conspiracy)," his substantial ties to Mexico, to include more than 400 border crossings since 2019 with 15 of those crossings in 2026, and his job instability. I*d.* at 2.

Rosas was therefore detained and transferred to this District where he made his initial appearance and arraignment and plea in front of United States Magistrate Judge Nancy J. Koppe on September 29, 2026. Mins., ECF No. 82. During that hearing, Chris Rasmussen, Esq., was appointed to represent Rosas. *Id.* Further, the parties agreed that Rosas had a full detention hearing in the District of Arizona. *Id.*

The following day, Rosa filed his motion for review of that detention hearing. ECF No. 86. In sum, Rosas argues that review is warranted because the government cannot meet its burden showing detention is warranted given Rosas's lack of criminal history and substance use issues, his full-time employment as an electrician, and the fact that pre-trial services in both Arizona and this District determined that conditions could be fashioned to ensure Rosas's appearance and the safety of the community. *See id.* at 1–2.

In its opposition, the government concedes that Rosas lacks criminal and drug-use history. ECF No. 90 at 3. However, it avers that there is "overwhelming" evidence showing Rosas has been involved in a "long-term, wide ranging" fentanyl trafficking organization. *Id.* As argued by the government, while Rosas has lived in Phoenix for the last three years, he previously resided in Mexico and Colorado, a state which is tied to the trafficking organization.

*Id.* It also argues that Rosas's employment was only verified by his girlfriend, who resides in Mexico and could not provide Rosas's address. *Id.* Finally, it argues that a vehicle registered to Rosas has been identified as delivering controlled substances to Colorado. *Id.* For these reasons, the government asserts that Rosas failed to overcome the rebuttable presumption of detention. *Id.*

## II. Legal standard

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court then conducts a de novo review of the magistrate judge's detention order. *U.S. v. Koenig*, 912 F.2d 1190 (9th Cir. 1990). The high standard imposed by de novo review is consistent with the goals of the Bail Reform Act, which envisioned a "more plenary" review process at the district-court level than at the appellate-court level. *Id.* at 1192. "The standard of review for pretrial detention orders is one of deference to the [magistrate judge's] factual findings, absent a showing that they are clearly erroneous, coupled with an independent review of the facts, the findings, and the record to determine whether the order may be upheld." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985)). Ultimately, a district judge must make her own *de novo* determination of the facts and of the propriety of detention. *Koenig*, 912 F.2d at 1193.

Pretrial detention should only be granted "in rare circumstances . . . and any doubts regarding the propriety of release should be resolved in the defendant's favor." *Gebro*, 948 F.2d at 1121. However, where there is probable cause to believe that the defendant committed a Controlled Substances Act (CSA) offense for which the maximum term of imprisonment is 10 years or more, there's a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3). A grand jury's return of an indictment is sufficient to

support a probable cause finding, triggering the presumption. *Kaley v. United States*, 571 U.S. 320, 329 n.6 (2014).

A defendant can overcome that presumption by offering evidence to rebut it. *See United States v. Valenzuela*, 2012 WL 1377087, at *2 (W.D. Wash. Apr. 19, 2012). But the presumption is not erased when a defendant proffers evidence to rebut it; rather, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Once a defendant has met his burden of production, the government then bears the burden of showing that the defendant poses a danger to the community by clear and convincing evidence, and that a defendant poses a flight risk by a preponderance of the evidence. *Gebro*, 948 F.2d at 1121.

18 U.S.C. § 3142(g) sets forth the specific factors a court shall consider when determining if there are conditions that will reasonably assure the appearance of a defendant and the safety of the community pending trial. Those factors include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The second factor—the weight of the evidence against the defendant—is the **least important** factor, considering the risk of assessing guilt at the pre-trial stages of the prosecution. *Gebro*, 948 F.2d at 1121.

## III. Discussion

As an initial matter, I grant Rosas's request to review his detention order. I therefore turn and address each of the 3142(g) factors. However, because Rosas is charged with a CSA offense that carries a mandatory minimum 10-year sentence, the presumption in favor of detention has been triggered, so I evaluate those factors to determine if Rosas has rebutted that presumption. And because the government asserts that it is only arguing that Rosas poses a risk of flight, *see* ECF No. 90 at 1 n 1., I determine if there is evidence showing Rosas is a risk of flight by a preponderance of the evidence.

### A. The nature and circumstances of the offense charged.

Rosas does not address the nature and circumstances of the offense. The government argues that while pre-trial services in Arizona and Nevada recommend release, they did not consider the rebuttable presumption in this case, as Rosas is charged with conspiring with six other individuals to distribute over 400 grams or more of a mixture and substance containing fentanyl (*see* ECF No. 36 at 3). ECF No. 90 at 2. The government further argues that pre-trial services did not consider the circumstances of the offense. *Id.* As alleged by the government, Rosas is a domestic and international drug courier who, since 2019, has crossed the U.S.-Mexico border approximately 400 times, which is consistent with information obtained during the investigation showing the frequency of movement of money and drugs by Rosas and his co-conspirators. *Id.* at 3–4. The government also argues that Rosas is associated with at least two drug "stash-cars," to include, most recently, a Chevrolet Avalanche that was used to transport drugs from California to Oregon in May of this year, which was stopped by Nevada State Police Highway Patrol in June 2026 and 39 kilograms of fentanyl was recovered from inside it. *Id.* at 4–5. While Rosas was not driving the vehicle at the time, it was being driven by Walter Estrada, who has also been indicted. ECF No. 36 at 3.

Given the amount of fentanyl involved, and the scope of the alleged drug trafficking organization, together with Rosas's alleged role as a courier, which explains the numerous border crossings, the factor weighs in favor of detention.

**B. The weight of the evidence against Rosas.**

While the least important factor to consider, the evidence against Rosas appears strong. Per the government's proffer, the investigation that led up to Rosas's indictment involved electronic and physical surveillance, search warrants, financial and border crossing records, and evidence gathered by informants and other investigative methods. ECF No. 90 at 3. As noted above, Rosas is associated with two known drug stash-cars, one of which was stopped with 39 kilos of fentanyl inside, and his border crossing records are consistent with his alleged role as a courier. Accordingly, this factor weighs in favor of detention.

**C. Rosas's history and characteristics.**

There is no dispute that Rosas is a U.S. citizen without any criminal history or history of substance use. *See* ECF No. 86 at 8; ECF No. 90 at 3–4 (government acknowledging Rosas lacks criminal history). His lack of criminal history, related lack of failures to appear, and lack of substance use history is helpful for Rosas. But the government argues that his lack of criminal history is unsurprising asserting that it is a "prerequisite" to being a driver for a trafficking organization, and further that drivers are usually required to register cars in their own names to "lessen suspicion if stopped." ECF No. 90 at 4. I therefore find Rosas's lack of criminal history is a neutral consideration, whereas his lack of substance use weighs slightly in his favor.

Rosas also argues that he has a full-time job that was verified, namely a 60-hour per week job as an electrician where he makes about $5,760 a month,[2] and that he has resided in Phoenix for the last three years. ECF No. 86 at 9–10. But, as argued by the government, the only person who "verified" the job was Rosas's girlfriend, who resides in Mexico, and who could not verify

[2] Rosas did not provide the name or contact information for his employer, any information on whether he is able to return to that job, or any evidence to support the source of his income.

Rosas's home address. ECF No. 90 at 3. The government also notes that the girlfriend also told pre-trial services that Rosas traveled to Mexico maybe once or twice a month, which is inconsistent with the significant number of border-crossing records. *Id.* at 4. The evidence before the court shows Rosas's employment status remains unverified, so this weighs against him.

Rosas further argues that he has only worked in the United States, and reports little to no contact with his family in Mexico. ECF No. 86 at 9–10. He does not, however, dispute his ties to Mexico. Rather he argues that there can be conditions fashioned to mitigate any risk of non-appearance based on those ties; namely, requiring him to surrender his passport book and card, barring any new travel document, restricting travel to Arizona and this District, imposing location monitoring, and requiring proof of employment. *Id.* at 10. His approximate 400 border crossings, together with the fact that his girlfriend lives there, demonstrates that Rosas ties to Mexico are strong.[3] This evidence weighs in favor of detention, even considering that pretrial services could require him to surrender his passport and place limitations on his travel. Weighing all this information, I find this factor tips in favor of detention.

**D. The nature and seriousness of the danger to any person or the community that would be posed by Rosas's release.**

Rosas's lack of criminal history suggests that he presents little danger to the community. And while the nature of the offense he is charged with committing is serious and dangerous, there *could* be conditions imposed to mitigate this risk. Accordingly, this factor tips slightly in favor of release.

---

[3] The government argues that Rosas attempted to downplay the number of border crossings to pretrial services, claiming he only traveled to Mexico once or twice a month. ECF No. 90 at 4. Even giving all benefit of the doubt to Rosas given he was making those statements to pretrial under the stress of an arrest, his statement is nevertheless concerning given that a couple of times of month is wholly inconsistent with seemingly weekly crossings for years. Further, in his motion, Rosas argues that he "reports little to no contact with this family in Mexico." ECF No. 86 at 10. The evidence before the court begs the following questions: what was Rosas doing in Mexico and how was he able to travel and back forth to Mexico so regularly if he was working a full-time job?

**E. The government has met its burden showing that Rosas is a flight risk by a preponderance of the evidence.**

Although Rosas proffered evidence to rebut the presumption in favor of detention, after weighing the evidence relevant to the § 3142(g)factors, I find that three out of four of those factors weigh in favor of detention. And the fourth factor only weighs slightly in favor of release. Accordingly, the government has met its burden by a preponderance of the evidence that the defendant poses a flight risk.

## IV. Conclusion

IT IS HEREBY ORDERED that defendant Edgar Rosas's motion for review of the magistrate judge's detention order **[ECF No. 86] is granted in part and denied in part**. His motion for review is granted, but his request for release on conditions is denied. Rosas's detention order is affirmed, but because the government only seeks detention as a risk of flight, it is modified to find Rosas is detained as a risk of flight. Rosas will remain detained pending trial.

IT IS FURTHER ORDERED that Rosas's reply that was filed without leave of court **[ECF No. 91] is STRICKEN**.

Dated: October 21, 2026

Cristina D. Silva
United States District Judge